# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:15-CV-00335-TBR

ANDREW ROBERTS, *et al*.                                                    Plaintiffs

v.

BLUE WORLD POOLS, INC.                                              Defendant

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant's motion to compel arbitration. (Docket #5). Plaintiffs have responded. (Docket #6). Defendant has replied. (Docket #9). This matter is ripe for adjudication. For the following reasons, Defendant's motion to compel arbitration (Docket #5) is DENIED.

## BACKGROUND

Plaintiffs are a collection of pool owners who purchased and financed their pools from Defendant Blue World Pools, Inc. ("Blue World"). Among other claims, Plaintiffs claim Blue World misrepresented terms of financing in violation of the Kentucky Consumer Protection Act and the Truth in Lending Act. (Docket #1-2).

Blue World allegedly advertised "that a consumer can buy a pool from Blue World Pools and have the pool installed for a total of $399.00." (Docket #1). After customers called to inquire about a pool, Blue World would schedule an in-home sales pitch. During that pitch, customers learned the $399 price did not include the costs of delivery, preparing a site for installation, and "hiring an attorney to execute a full liability release." (Docket #1-2). If a customer purchased a pool, she was presented with paperwork that included these additional costs, but did not include any financing charges.

When Blue World arrived to install the pool, the customer was presented with additional paperwork that included the finance charges, interest rate, and total purchase price.  The interest rate ranged from 15% to 36%.  The customer was also required to grant Blue World a lien on the customer's property.  Any customer who objected was told they could no longer rescind the purchase.  (Docket #1-2). Plaintiffs Andrew Roberts and Stephanie Roberts claim they initially agreed to purchase a pool for $24,631.11, but when the installer arrived with the additional contract terms, the new purchase price was $55,278.60.  (Docket #1-2).  Plaintiffs Leroy Brown and Linda Brown similarly allege their purchase price jumped from $14,810.48 in the initial contract to $31,434.48 at the time of installation.  (Docket #1-2).  Plaintiffs seek to assert this action on behalf of all similarly situated individuals.

Blue World moves to compel arbitration, stating the contracts signed by the respective Plaintiffs contained an arbitration clause.  (Docket #5).  Plaintiffs argue these arbitration agreements should be not enforced because they are both substantively and procedurally unconscionable.  (Docket #6).  Plaintiffs also request additional time for discovery on the issue of whether the arbitration agreement is valid.

STANDARD

Congress enacted the United States Arbitration Act of 1925, more commonly referred to as the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, in response to the common law hostility toward arbitration and the refusal of many courts to enforce arbitration agreements.  The United States Supreme Court has since interpreted the FAA as codifying "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).  The Supreme

2

Court has further stated that the FAA's underlying purpose is to put arbitration agreements "upon the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA establishes a procedural framework applicable in both federal and state courts, and also mandates that substantive federal arbitration law be applied in both. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

Section 3 of the FAA permits a party seeking to enforce an arbitration agreement to request that litigation be stayed until the terms of the arbitration agreement have been fulfilled. 9 U.S.C. § 3. Before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 80 (2010) (listing two exceptions to the general rule that "questions related to the validity of an arbitration agreement are usually matters for a court to resolve before it refers a dispute to arbitration"). This review requires the Court to determine first whether "a valid agreement to arbitrate exists between the parties," and second whether "the specific dispute falls within the substantive scope of the agreement." *Id.* (quoting *Javitch*, 315 F.3d at 624);

"Because arbitration agreements are fundamentally contracts," the Court must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). In Kentucky, as in all jurisdictions, a contract is only enforceable if both parties

agree to be bound by it.  *See, e.g.*, *David Roth's Sons, Inc. v. Wright & Taylor, Inc.*, 343 S.W.2d 389, 391 (Ky. 1976).

## DISCUSSION

The Court will first discuss Plaintiffs' argument that the arbitration agreement is (I) unconscionable.  The Court will then turn to Plaintiffs' request for (II) additional time to conduct discovery.

### I.      Unconscionable.

"A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms."  *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001) (*citing Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764 (Ky. App. 1985)).  "The doctrine of unconscionability has developed as a narrow exception to this fundamental rule."  *Schnuerle v. Insight Communs.*, Co. L.P., 376 S.W.3d 561, 575 (Ky. 2012).  "It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain."  *Id.*  "[A]n unconscionable contract us 'one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'"  *Louisville Bear Safety Serv. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 439 (citing Black's Law Dictionary, Revised 4th Ed., p. 1694).

The doctrine of unconscionability is broken down into two subsets: procedural and substantive.  "Procedural unconscionability relates to the process by which an agreement is reached and to the form of the agreement."  *Energy Home v. Peay*, 406

S.W.3d 828, 835 (Ky. 2013).  "Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent."  *Id*.

Plaintiffs argue the arbitration clause is both procedurally and substantively unconscionable.  (Docket #6).  The Court will address the (A) procedural unconscionability argument, before turning to the (B) substantive unconscionability argument.

### A.    Procedural Unconscionability.

"Procedural, or 'unfair surprise,' unconscionability 'pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language.  *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 343 (Ky. App. 2001) (*quoting Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3rd Cir. 1999).  An example is when "material, risk-shifting" terms "not typically expected" are hidden in "boilerplate."  *Id*.  Conversely, a contract clause is not procedurally unconscionable if it is stated in "clear and concise language" and is "not hidden or obscured."  *Energy Home v. Peay*, 406 S.W.3d 828, 836 (Ky. 2013); *Conseco*, 47 S.W.3d at 343 ("its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it, at least in its general import").

Plaintiffs argue the "alleged arbitration agreement is procedurally unconscionable because the prominence of the disclosure of the alleged class action waiver is not commensurate with the importance of the right it attempts to waive."  (Docket #6).  Plaintiffs also criticize the arbitration clause for being entirely capitalized.

The Court agrees that having the entire one-page arbitration agreement capitalized is a poor way to draw attention to the specific rights being waived. When everything is emphasized, nothing is emphasized. *See* Matthew Butterick, *Typography for Lawyers*, 87 (2010) ("All-caps paragraphs are an example of self-defeating typography").[1]

However, this flaw alone does not render the arbitration clause and class action waiver unconscionable. The arbitration clause is sufficiently notable. The Plaintiffs initialed next to a line that stated: "I (WE) AGREE TO BINDING ARBITRATION AS WRITTEN IN <u>SECTION G,</u> (SEE SECTION "G") <u>ON PAGE 2</u>." Section G stated in part:

> BINDING ARBITRATION AGREEMENT: ANY DISPUTE, CLAIM OR
> CONTROVERSY OF ANY KIND WHETHER IN CONTRACT, TORT,
> OR OTHERWISE ARISING IN ANY MANNER RELATING TO THIS
> AGREEMENT WHETHER IT BE PRIOR, PRESENT, OR FUTURE
> DEALINGS WITH US THAT CANNOT BE RESOLVED BY
> NEGOTIATION BETWEEN THE PARTIES SHALL BE SUBJECT TO
> MANDATORY, EXCLUSIVE AND BINDING ARBITRATION . . . THE
> PURCHASER AND DEALER (BLUE WORLD POOLS, INC.) AGREE
> TO ABIDE BY THE RULING OF THE ARBITRATION ASSOCIATION
> IN LIEU OF FILING A LAWSUIT. . . . (Docket #5-4).

Plaintiffs were also required to sign a separate contract titled "Arbitration Agreement." (Docket #5-5). It is a single page. *Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. App. 1959) ("one who signs a contract is presumed to know its contents"). It does not obscure the class action waiver in legalese, but plainly states:

> "A JURY HEARS NO CLAIM SUBMITTED TO ARBITRATION
> AND NO CLAIM MAY BE BROUGHT AS A CLASS ACTION

---

[1] Butterick explains that the "shapes of lowercase letters – some tall (dhkl), some short (aens), some descending (gypq) – create a varied visual contour" that is easier to recognize than uniformly sized capital letters. MATTHEW BUTTERICK, TYPOGRAPHY FOR LAWYERS, p. 87. Butterick also suggests alternatives for adding emphasis, such as using the heading "Important," using a larger size text, and the sparing use of bold or italic.

> OR AS A PRIVATE ATTORNEY GENERAL ACTION.  YOU
> WILL NOT HAVE THE RIGHT TO ACT AS A CLASS
> REPRESENTATIVE OR PARTICIPATE AS A MEMBER OF A
> CLASS OF CLAIMANTS WITH RESPECT TO ANY CLAIM."
> (Docket #5-5).

This waiver is repeated in the concluding line, which states:

> THE RESULT OF THIS ARBITRATION AGREMENT IS THAT
> THE PURCHASER IS WAIVING THEIR RIGHTS FOR A
> DISPUTE BETWEEN THE PARTIES TO BE LITIGATED IN
> COURT, TRIED BEFORE A JURY, BROUGHT AS A MEMBER
> OF A CLASS ACTION OR BROUGHT AS A PRIVATE
> ATTORNEY GENERAL ACTION.

The arbitration agreement and class action waiver is not procedurally unconscionable because it is brief, relatively devoid of legalese, and contained in a separate document. *Holifield v. Beverly Health & Rehab. Servs.*, 2008 U.S. Dist. LEXIS 47909 *13 (W.D. Ky. 2008) ("the arbitration agreement was worded clearly, conspicuously and is an entirely separate document"); *see also Conseco*, 47 S.W.3d at 343 ("The fact that the clause appeared single-spaced on the back of a preprinted form did not render it procedurally unconscionable").

### B. Substantive Unconscionability.

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Energy Home v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013).  "When reviewing for substantive unconscionability, consideration is given to 'the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'" *Id.* (*quoting Schnuerle v. Insight Communs., Co. L.P.*, 376 S.W.3d 561, 577 (Ky. 2012).

7

Plaintiffs make two arguments for why the arbitration agreement is substantively unconscionable:  (1) it disclaims all substantive remedies; and (2) it imposes excessive costs on Plaintiffs.

### 1. Disclaims All Remedies.

"[I]f a plaintiff asserts valid statutory or common law claims and an arbitration provision prevents the plaintiff from seeking all remedies available under those claims, the arbitration provision essentially prevents the plaintiff from meaningfully pursuing the claims." *Davis v. Global Client Solutions, LLC*, 765 F. Supp. 2d 937, 940 (W.D. Ky. 2011).  "A provision limiting remedies in such a way is a substantial waiver of a plaintiff's rights, and an arbitration clause that contains a substantial waiver of a party's rights is unenforceable." *Id*.

Plaintiffs argue the arbitration clause is substantively unconscionable because it "fails to provide [Plaintiffs] with an adequate opportunity to vindicate [their] claims." (Docket #6).  The limitation of liability provision states:

> THE SOLE AND EXCLUSIVE REMEDY OF THE PURCHASER(S) AND THE OBLIGATION OF THE DEALER FOR THE MATTERS SET FORTH HEREIN WHETHER ON WARRANTY, CONTRACT, NEGLIGENCE OR STRICT LIABILITY, IS THE REPAIR OF THE DEFECT.  THE DEALER OR PURCHASER(S) SHALL IN NO WAY BE LIABLE FOR SPECIAL, EXEMPLARY, MULTIPLE, OR CONSEQUENTIAL DAMAGES.  (Docket #5-3).

Plaintiffs' sole remedy is to have their pool repaired.  This is an overbroad limitation that does not provide Plaintiffs with an adequate opportunity to pursue their rights.  Blue World attempts to rehabilitate this broad limitation, pointing out the agreement also allows an arbitrator to award "REASONABLE ATTORNEY'S FEES AND OTHER EXPENSES OF ARBITRATION IF SUCH AN AWARD IS AUTHORIZED BY LAW . .

8

. ." (Docket #9). However, the ability of Plaintiffs to recover attorneys' fees is small consolation when almost all other recourse has been stripped away.[2]

In *Abner*, the Kentucky Court of Appeals held an arbitration agreement was unconscionable because it limited all damages "other than actual damages." *Mortg. Elec. Registration Sys. v. Abner*, 260 S.W.3d 351, 355 (Ky. App. 2008). The limitation of liability clause in this case appears even more restrictive, but that does not end the Court's analysis. "[A]s subsequent courts construing *Abner* have emphasized, the question is whether the arbitration clause is so intertwined with the unconscionable provision that the two clauses cannot be severed from each other." *Brookdale Senior Living, Inc. v. Stacy*, 27 F. Supp. 3d 776, 789-90 (E.D. Ky. 2014). In *Abner*, the arbitration agreement did not contain a severability clause and therefore the entire arbitration agreement was found unconscionable. *Abner*, 260 S.W.3d at 355. Conversely, several cases following *Abner* distinguished themselves on the grounds that the unconscionable provision could be severed from the rest of the arbitration agreement. *Stacy*, 27 F. Supp. 3d at 790; *Brookdale Senior Living Inc. v. Hibbard*, 2014 U.S. Dist. LEXIS 76486 *20-21 (E.D. Ky. 2014); *Francis v. Cute Suzie, LLC*, 2011 U.S. Dist. LEXIS 58840, *11 (W.D. Ky. 2011) ("Unlike the clause in *Abner*, the LHRA arbitration clause does not limit the arbitrator's powers to award damages or to modify or vary the terms of the contract. . . . [The arbitrator has] the power to disregard [unconscionable terms] pursuant to the LHRA's severability clause").

---

[2] Furthermore, the carve-out allowing attorney's fees to be recovered seems designed to protect Blue World's right to recover attorneys' fees from Plaintiffs. "PURCHASER AGREES TO REIMBURSE THE DEALER FOR REASONABLE ATTORNEY FEES AND EXPENSES INCURRED IN CONNECTION WITH ANY SUIT OR MOTION TO COMPEL ARBITRATION." (Docket #5-3).

In this case, the arbitration agreement contains a severability provision, which states:

> IF ANY PART OF THIS ARBITRATION SECTION IS FOUND TO BE INVALID OR UNENFORCEABLE UNDER ANY LAW OR STATUTE, THE REMAINDER OF THE ARBITRATION SECTION SHALL BE ENFORCEABLE WITHOUT REGARD TO SUCH INVALIDITY OR UNENFORCEABILITY.

Therefore, the arbitrator may find the limitation of liability clause to be unconscionable and unenforceable and therefore sever that clause, preserving the remaining terms of the arbitration agreement. *Stacy*, 27 F. Supp. 3d at 790.

Plaintiffs argue this Court should follow *Cooper v. MRM Inv. Co.*, in which the Sixth Circuit refused to enforce an entire arbitration agreement because it contained an unenforceable clause. 367 F.3d 493 (6th Cir. 2004). However, *Cooper* reinforces the standard that a severability provision may salvage an arbitration agreement that contains an unconscionable provision. In *Cooper*, the arbitration agreement did not contain a severability clause and the "Court could not invent a severability clause in order to 'red-line' the cost-splitting provision while enforcing the clause requiring Cooper to arbitrate in the first place." *Id*. at 512.[3]

---

[3] The *Cooper* court cited the Eleventh Circuit for the notion that "To sever the costs and fees provision and force the employee to arbitrate a Title VII claim despite the employer's attempt to limit the remedies available would reward the employer for its actions and fail to deter similar conduct by others." *See Perez v. Globe Airport Sec. Servs.*, 253 F.3d 1280, 1287 (11th Cir. 2001), vac'd by 294 F.3d 1275 (11th Cir. 2002). However, the *Cooper* court also cited the Eighth Circuit, which criticized the Eleventh Circuit's decision. *See Gannon v. Circuit City Stores*, 262 F.3d 677, 683 n.8 (8th Cir. 2001). Nothing in the Sixth Circuit's analysis suggests it has wavered from its stance that "when the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement." *Morrison v. Circuit City Stores*, 317 F.3d 646, 675 (6th Cir. 2003).

## 2.   Imposes Excessive Costs.

The "existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 90-91 (2000); *Morrison v. Circuit City Stores*, 317 F.3d 646, 659 (6th Cir. 2003) ("if the fees and costs of the arbitral forum deter potential litigants, then that forum is clearly not an effective, or even adequate, substitute for the judicial forum").  "[P]otential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum." *Morrison*, 317 F.3d at 663.

The party "seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 90-91.  A reviewing court must compare "average or typical arbitration costs" with the "costs of litigation," in the process "discount[ing] the possibilities that the plaintiff will not be required to pay costs or arbitral fees because of ultimate success on the merits." *Morrison*, 664 F.3d at 664. "The issue is whether the terms of the arbitration agreement itself would deter a substantial number of similarly situated [plaintiffs] from bringing their claims in the arbitral forum." *Id*.

Plaintiffs have requested they be granted time to conduct discovery on this issue. (Docket #6).  The Court will allow the Plaintiffs a limited time to investigate the capacity of their clients and similarly situated plaintiffs to pay the costs of arbitration.  The parties

shall also meet and confer about their choice of arbitrator pursuant to the arbitration agreement and provide the Court with an estimate of potential costs.

## II.     Additional Time to Conduct Discovery.

Plaintiffs also request additional time to "conduct discovery regarding whether the arbitration agreement is valid."  (Docket #6).  Plaintiffs argue they were fraudulently induced into signing the purchase agreement and seek facts surrounding the drafting of these contracts, "circumstances surrounding Plaintiffs' execution of their respective contracts, and the training and education of Blue World Pools agents who countersigned Plaintiffs' respective contracts."  (Docket #6).

Plaintiffs' request first requires this Court to explain what issues may be decided by this Court and what issues must be decided by an arbitrator.  "[I]f the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it."  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).  "But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."  *Id*.  In other words, for a district court to decide a claim of fraud in the inducement, "the complaint must contain 'a well-founded claim of fraud in the inducement of the arbitration clause itself, standing apart from the whole agreement, that would provide grounds for the revocation of the agreement to arbitrate.'"  *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001); (*quoting Arnold v. The Arnold Corp.*, 920 F.2d 1269, 1280-81 (6th Cir. 1990).  "Pleading that an arbitration clause was part of a broader fraudulent scheme without more, is no longer sufficient to overcome the strong federal policy in favor of arbitration."  (citation and punctuation

omitted).  *Id.* at 491.  *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 912 F.2d 1563, 1567 (6th Cir. 1990) ("If the arbitration clause is not at issue, then the arbitrator will decide challenges to the contract containing the arbitration clause"); *Prima Paint*, 388 U.S. 402 ("a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud").  The Court will address this issue after further discovery.

In short, the Court will allow Plaintiff to conduct discovery on the claim of substantive unconscionability.  The parties must complete discovery by **October 9, 2015**. Plaintiff must file a brief on or before **October 13, 2015**.  Defendant must file a response on or before **November 6, 2015.**  Plaintiff must file any reply on or before **November 13, 2015**.  The parties shall address all issues.

This matter is set for a **telephonic conference** on **December 15, 2015 at 9:45 am Eastern (Louisville) Time**.  The Court shall place the call to counsel.

For the foregoing reasons, Defendant's motion to compel arbitration (Docket #5) is **DENIED**.